**RETAIL DIGITAL NETWORK,
LLC, Plaintiff,**

v.

**Jacob APPELSMITH, as Director of the Alcoholic Beverage Control Board, and Does 1–10, Inclusive, Defendants.**

**Case No. CV 11–9065 CBM (PJWx).**

United States District Court,
C.D. California.

May 13, 2013.

Opinion, I.R.S. CCA 201246030, 2012 WL 5748553 (Nov. 16, 2012), because it cannot be used or cited as precedent. I.R.C. § 6110(k)(3).

Olivier A. Taillieu, The Taillieu Law Firm, Beverly Hills, CA, for Plaintiff.

Gabrielle Harner Brumbach, CAAG—Office of Attorney General of California, Charles Pereyra–Suarez, Charles Pereyra–Suarez Law Offices, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CONSUELO B. MARSHALL, District Judge.

The matter before the Court is Defendant Jacob Appelsmith's, as Director of the California Department of Alcoholic Beverage Control, Motion for Summary Judgment [Docket No. 31].

### I. JURISDICTION

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201.

### II. PROCEDURAL HISTORY

Plaintiff Retail Digital Network, LLC ("Plaintiff" or "RDN") filed this action against Defendant Jacob Appelsmith, as Director of the California Department of Alcoholic Beverage Control ("Defendant" or "ABC") on November 1, 2011. [Docket No. 1.] Plaintiff seeks (1) declaratory judg-

ment under 28 U.S.C. § 2201 based on a facial and as applied constitutional challenge to California Business & Professions Code § 25503, subdivisions (f), (g), and (h) ("Section 25503, subdivisions (f), (g), and (h)"); and (2) Injunctive Relief under 28 U.S.C. § 2201 enjoining Defendant and his agents from enforcing Section 25503, subdivisions (f), (g), and (h). (*Id.*)

Section 25503 provides, in relevant part: No manufacturer, winegrower, manufacturer's agent, California winegrower's agent, rectifier, distiller, bottler, importer, or wholesaler, or any officer, director, or agent of any such person, shall do any of the following:

(f) Pay, credit, or compensate a retailer or retailers for advertising, display, or distribution service in connection with the advertising and sale of distilled spirits.

(g) Furnish, give, lend, or rent, directly or indirectly, to any person any decorations, paintings, or signs, other than signs advertising their own products as permitted by Section 25611.1.

(h) Pay money or give or furnish anything of value for the privilege of placing or painting a sign or advertisement, or window display, on or in any premises selling alcoholic beverages at retail.

Cal. Bus. & Prof.Code § 25503.

Defendant answered and moved for summary adjudication.[1] [Docket Nos. 7, 31.]

## III. FACTUAL BACKGROUND

Neither party disputes the following facts. (*See* Docket Nos. 32, 39.)

Plaintiff is in the business of installing liquid crystal display advertisements (the "Displays") in retail outlets. Plaintiff enters into contracts with entities and individuals that desire to advertise their products and services on Plaintiff's Displays. Plaintiff has attempted to enter into written contracts with manufacturers of alcohol to advertise their alcoholic product on the Displays. The manufacturers declined to enter into advertising agreements with Plaintiff due to concerns that they might violate Section 25503, subdivisions (f), (g), and (h).

Plaintiff also contracts with retail stores to allow Plaintiff to install its Displays in the store. Plaintiff's current advertising contracts include over one hundred wine and spirit stores in California, primarily in Los Angeles County. In exchange for the privilege of having the display placed in each retail store, Plaintiff agrees to pay the retail store a percentage of the gross revenue. Two versions of the contract with the retail outlets exist: (1) one pays the retail store a percentage of the gross advertising fees; (2) the other version of the contract pays the retail store a percentage of the advertising fees generated from advertisers engaged in non-alcohol-related business.

## IV. STANDARD OF LAW

Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). A party seeking summary judgment bears the initial burden of informing the court of

---

1. Plaintiff filed a Statement of Genuine Disputes of Material Fact and supporting Compendium of Evidence in Opposition to Motion for Summary Judgment. [Docket Nos. 39, 40.] At oral argument, however, both parties agreed that there are no material issues of fact in dispute and the only issues in dispute are legal and summary judgment is proper.

the basis for its motion and of identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all inferences in the light most favorable to the nonmoving party. *T.W. Elec. Svc., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987).

Once the movant has sustained the initial burden of production, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the nonmovant bears the burden of proof at trial, the court evaluates "the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254, 106 S.Ct. 2505. The court determines whether there is a triable issue of fact in light of the "actual quantum and quality of proof" the nonmovant must meet at trial. *Id.* Rule 56 does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

## V.  DISCUSSION

### A.  Whether Plaintiff Has Standing

■ "First Amendment cases raise 'unique standing considerations,' that 'tilt[ ] dramatically toward a finding of standing,' " *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir.2010) (citing *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir.2003) and *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir.2000)). In the First Amendment context it is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff. *ACLU of Nev. v. Heller*, 378 F.3d 979, 984 (9th Cir.2004) (quotation marks and citation omitted). "The threshold standing inquiry is analogous in this regard to the threshold question of Article III subject matter jurisdiction, where the failure to state a claim upon which relief can be granted does not mean that federal question jurisdiction is lacking." *The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir.2000); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S.Ct. 1003, 1010, 140 L.Ed.2d 210 (1998); *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 958–59, 104 S.Ct. 2839, 2848, 81 L.Ed.2d 786 (1984) (question of whether challenged statute was substantially overbroad was question better left for merits, not resolved as part of standing inquiry).

■ Even purely economic harm, such as that alleged by Plaintiff, has been found sufficient to confer standing in First Amendment cases.[2] *See The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir.2000). In *Pitt News* a student newspaper sought to enjoin enforcement of a Pennsylvania

---

2. Plaintiff has provided deposition testimony of its CEO, Lawrence Hallier, that liquor producers including Diageo, Jack Daniels Tennessee Whiskey, and MillerCoors declined to contract with Plaintiff due to concerns with Section 25503. (Opp'n at 5–6; Pltf's Compendium of Evidence In Opposition to Motion for Summary Judgment, Exs. A–B.) Mr. Hallier also testified that Moet Hennessy and Saint Germain initially contracted with Plaintiff but later decided not to continue due to concerns with Section 25503. (*Id., see also* Docket No. 43 at ¶¶ 2–3.)

statute providing penalties against businesses that advertised alcoholic beverages in newspapers and other materials "published by, for or in behalf of any educational institution." *Id.* at 358. The Third Circuit held that the plaintiff's loss of advertising revenue after its advertisers cancelled their contracts was an injury in fact sufficient to confer standing. *Id.* at 359. Defendant does not argue that the rule is or should be different in the Ninth Circuit, but only that Plaintiff must offer "very strong proof." (Motion at 4:24–27.) Defendant cites no authority for this argument and the Court has found none. *See Baxter v. MCA, Inc.,* 812 F.2d 421, 424 (9th Cir.1987) (Court may not weigh evidence on summary judgment).

The Court finds that Plaintiff has Article III standing. The Court thus need not consider whether Plaintiff has standing to challenge Section 25503 on overbreadth or vagueness grounds.

## B. Whether Section 25503 is Constitutional

### 1. *Content Based v. Content Neutral*

■ In the Ninth Circuit, "whether a statute is content neutral or content based is something that can be determined on the face of it; if the statute describes speech by content, then it is content based." *Minority Television Project, Inc. v. F.C.C.,* 676 F.3d 869, 874 (9th Cir.2012) (citing *G.K. Ltd. Travel v. City of Lake Oswego,* 436 F.3d 1064, 1071 (9th Cir. 2006)). " 'Content discrimination' occurs when the government 'choos[es] the subjects' that may be discussed, while 'viewpoint discrimination' occurs when the government prohibits 'speech by particular speakers,' thereby suppressing a particular

view about a subject." *Giebel v. Sylvester,* 244 F.3d 1182, 1188 (9th Cir.2001); *see also Sorrell v. IMS Health Inc.,* —— U.S. ——, 131 S.Ct. 2653, 2663, 180 L.Ed.2d 544 (2011) (Vermont statute restricting sale, disclosure and use of pharmacy records and disfavoring pharmaceutical manufacturers was content and speaker-based restriction).

■ While the parties agree that Section 25503 does not suppress all commercial speech by alcohol manufacturers, it does burden the expression of that speech in specific fora. Defendant's argument that "Section 25503 [does not] regulate the speaker" is belied by the text of the statute which begins, in relevant part, with "[n]o manufacturer, winegrower, manufacturer's agent, California winegrower's agent, rectifier, distiller, bottler, importer, or wholesaler, or any officer, director, or agent of any such person, shall do any of the following . . . ." Cal. Bus. & Prof.Code § 25503. The Court finds that Section 25503 disfavors certain forms of commercial speech by alcohol manufacturers (paid advertisements in retail stores) and is thus not a content-neutral time, place or manner restriction.

### 2. *Central Hudson* and Subsequent Supreme Court Jurisprudence

■ As a preliminary matter, Plaintiff conceded at oral argument that the Ninth Circuit's decision in *Actmedia, Inc. v. Stroh* leaves "no room for this litigation" except to the extent that a trio of subsequent Supreme Court decisions is clearly irreconcilable with its conclusions. 830 F.2d 957 (9th Cir.1986) (upholding Section 25503(h) against a First Amendment challenge).[3] These three decisions are: *Rubin v. Coors Brewing Co.,* 514 U.S. 476, 478,

---

**3.** Plaintiff stated at oral argument that Section 25503(h) "is the broadest of the subsection that we have at issue here . . . .That is the

specific subsection . . . that is invalid on its face completely."

115 S.Ct. 1585, 1587, 131 L.Ed.2d 532 (1995); *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 490, 116 S.Ct. 1495, 1502, 134 L.Ed.2d 711 (1996); and *Sorrell v. IMS Health Inc.,* —— U.S. ——, 131 S.Ct. 2653, 2656, 180 L.Ed.2d 544 (2011).

### i. Subsequent Supreme Court Authority

Plaintiff argues that *Coors Brewing Co., 44 Liquormart, Inc.,* and *Sorrell* together track the Supreme Court's evolution since *Central Hudson* towards heightened scrutiny of laws that burden non-misleading commercial speech. (Opp'n at 16:5–18:8.) Plaintiff further argued both at oral argument and in its papers that *"Sorrell* deals with a situation which is virtually identical to the one that we have here, that is that the state[ ] was trying to regulate effect[ive] marketing they were trying to regulate drug manufacturers from having access to information so that they could directly market to physicians . . . ." (*See also* Opp'n at 9:15–10:12, 12:25–18:8.) Plaintiff takes the position that *Sorrell* requires heightened scrutiny review of laws burdening non-misleading commercial speech, amending the *Central Hudson* test applied in *Actmedia* and requiring a different result here. (Opp'n at 17:26–18:8.)

In *Coors Brewing Co.,* the Supreme Court held the Federal Alcohol Administration Act's ban prohibiting beer labels from displaying alcohol content was unconstitutional. *Coors Brewing Co.,* 514 U.S. at 491, 115 S.Ct. 1585. The Supreme Court applied the four-factor *Central Hudson* test. Justice Stevens concurred in the judgment but found fault with the majority's "rigid commercial/noncommercial distinction," calling the *Central Hudson* test "formulaic" and "misguided." *Id.* at 493–

494, 115 S.Ct. 1585 (Steven, J., concurring). Justice Stevens concluded that the government's "paternalistic motives" do not permit "an attempt to blindfold the public." *Id.* at 498, 115 S.Ct. 1585 (Stevens, J., concurring).

A year later in *44 Liquormart, Inc.,* with Justice Stevens writing for the majority, the Supreme Court struck down a pair of Rhode Island statutes that together banned *all* advertising of alcoholic beverage prices, with the sole exception of price tags at the point of sale. 517 U.S. at 489–490, 116 S.Ct. 1495. In finding both laws unconstitutional, the Supreme Court highlighted two primary policy considerations driving its commercial speech First Amendment jurisprudence before and since *Central Hudson. Id.* at 499–501, 116 S.Ct. 1495. First, that complete speech bans are particularly dangerous because they foreclose alternative means of disseminating certain information. *Id.* at 501–504, 116 S.Ct. 1495. Second (echoing Justice Steven's *Coors Brewing Co.* concurrence), complete bans on truthful commercial speech often rest solely on the offensive assumption that the public will respond "irrationally" to the truth. *Id.*

Contrary to Plaintiff's argument that *44 Liquormart* marked the Supreme Court's departure from *Central Hudson* towards heightened scrutiny, *44 Liquormart's* review of the Supreme Court's commercial speech jurisprudence began and ended with *Central Hudson. Id.* at 499–509, 116 S.Ct. 1495. Not only did *44 Liquormart* affirm the continuing relevance of the *Central Hudson* test, but the "special care" standard of scrutiny that Plaintiff argues was born in *44 Liquormart* is actually a quotation from the majority opinion in *Central Hudson.*[4] *Id.* at 508, 116 S.Ct.

---

4. *44 Liquormart* did hold that *Posadas de Puerto Rico Associates v. Tourism Co. of Puer-* *to Rico* erroneously applied the *Central Hudson* test. 517 U.S. at 509–510, 116 S.Ct.

1495; *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, n. 9, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) ("We review with special care regulations that entirely suppress commercial speech in order to pursue a nonspeech-related policy.")

Fifteen years after *44 Liquormart*, the Supreme Court reviewed another state statute that completely banned speech based on paternalistic motivations. In *Sorrell*, the Supreme Court struck down a Vermont statute that restricted the sale of information concerning physicians' prescription practices or "prescriber-identifying information". 131 S.Ct. at 2659. The Supreme Court found that, on its face, the Vermont statute enacted "content-and speaker-based" restrictions on the sale, disclosure, and use of prescriber-identifying information because it forbade sale or use of the information for marketing purposes. *Id.* at 2663. The Supreme Court also found that the legislative history of the Vermont statute "explained that [pharmaceutical marketers], in particular those who promote brand-name drugs, convey messages that 'are often in conflict with the goals of the state.'" The legislature designed [the statute] to target those speakers and their messages for disfavored treatment." *Id.* "The First Amendment requires heightened scrutiny whenever the government creates "a regulation of speech because of disagreement with the message it conveys."" 131 S.Ct. at 2664.

Plaintiff relies on this statement for its argument that *Sorrell* requires heightened scrutiny review of laws burdening non-misleading commercial speech, further amending the *Central Hudson* test applied in *Actmedia* and requiring a different re-

sult here. (Opp'n at 17:26–18:8.) The statement not only cited to a previous Supreme Court decision applying *Central Hudson*, but is also clarified elsewhere in both the majority and dissenting opinions. *See Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 418, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (applying *Central Hudson*). First, the majority opinion applies the *Central Hudson* test and comments "[a]s in previous cases, however, the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." *Sorrell*, 131 S.Ct. at 2667. Significantly, the majority stop short of defining the applicable "stricter form of judicial scrutiny." Second, the dissenting opinion by Justice Breyer (and joined by Justices Ginsburg and Kagan), notes that the majority opinion suggests but does not hold that a standard stricter than the traditional *Central Hudson* test might be applied to content-based restrictions. 131 S.Ct. at 2677 (Breyer, J., dissenting). Justice Breyer takes the position that the Vermont statute at issue in *Sorrell* should be reviewed more permissively as commercial regulation but should survive even if "*Central Hudson* might otherwise apply." 131 S.Ct. at 2675 (Breyer, J., dissenting).

Even assuming *arguendo* that *Sorrell* established a heightened level of scrutiny for complete speech bans founded on paternalistic motivations, the parties agree Section 25503 is not a complete ban. (*See* Feb. 21, 2013 Tr. at 5–6.) The Court finds that *Sorrell* is not "clearly irreconcilable" with the Ninth Circuit's reasoning in *Actmedia*. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir.2003) (only "[i]n ... cases of such clear irreconcilability ... district courts should consider themselves bound

1495; 478 U.S. 328, 329, 106 S.Ct. 2968, 2970, 92 L.Ed.2d 266 (1986). That case is not cited in the Ninth Circuit's *Actmedia* decision and does not affect the Court's analysis here.

by the intervening higher authority and reject the prior opinion of [the Ninth Circuit] . . . .")

## VI.  CONCLUSION

The Court **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**